NO. 23-2330

---

United States Court of Appeals
For the Seventh Circuit

---

LKQ CORPORATION,

*Plaintiff-Appellant,*

---v.---

ROBERT RUTLEDGE,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
CASE NO. 1:21-CV-03022

Hon. Judge Thomas M. Durkin

---

## BRIEF FOR DEFENDANT-APPELLEE

---

Tiffany L. Carpenter
Joseph W. Barber
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Ave., Ste. 1100
Chicago, IL 60604
T: (312) 456-3421; F: (312) 939-5617
tlc@h2law.com | jwb@h2law.com

*Counsel for Appellee*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>United States District</u> Court of Appeals for the Seventh Circuit; Case No. 23-2330

Short Caption: <u>LKQ Corporation v Robert Rutledge</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Defendant/Counter-Claimant - Appellee Robert Rutledge

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Howard & Howard Attorneys PLLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: <u>/s/Tiffany L. Carpenter</u>                    Date: <u>October 10, 2023</u>

Attorney's Printed Name: <u>Tiffany L. Carpenter</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [✓]    **No** [ ]

Address: <u>Howard & Howard Attorneys PLLC, 200 S. Michigan Ave., Suite 1100, Chicago, IL 60604</u>

Phone Number: <u>(312) 456-3421</u>                    Fax Number: <u>(312) 939-5617</u>

E-Mail Address: <u>tlc@h2law.com</u>

rev. 12/19 AK

## Table of Contents

Rule 26.1 Disclosure Statement ...................................................... i

Table of Authorities ................................................................... iv

Jurisdictional Statement ............................................................ vii

Introduction ............................................................................. 1

Statement of the Case ................................................................ 4

A.    Rutledge enters two separate agreements, both of which contain non-compete restrictive covenants ........................... 4

B.    Rutledge resigns from LKQ and begins working for Fenix Auto Parts ................................................................. 6

C.    LKQ's justification for enforcing overbroad restrictive covenants ......... 7

D.    LKQ's pre-suit investigation of its claims revealed Rutledge did not harm LKQ ................................................. 8

E.    Proceedings Below .......................................................... 8

Statement of the Issues ............................................................. 10

Summary of the Argument ........................................................ 11

Argument ............................................................................... 12

A.    The District Court correctly found RSU Non-Compete is an invalid and unenforceable restraint of trade ....................... 12

    i.    Standard of Review ................................................. 12

    ii.    The RSU Non-Compete is unenforceable under Delaware law ........................................................ 12

    iii.    The cases relied on by LKQ are inapt ......................... 16

        1.    *Pierce*, *Hall*, and *Dunai* were decided under an inapplicable arbitrary and capricious standard tasked with reviewing a corporate decision ..................... 17

        2.    *Pierce*, *Hall*, and *Dunai* sought claw-back of stock option gains under a much narrower time frame

that is not materially prejudicial to its former
employees .......................................................................... 18

3.    The non-compete language in *Pierce*, *Hall*, and
*Dunai* is narrower ............................................. 19

B.    The District Court correctly found that the Confidentiality
Agreement Non-Compete is unenforceable and Rutledge did not
violate its terms ......................................................................... 21

i.    Standard of Review ...................................................... 21

ii.    The District Court correctly determined that the
Confidentiality Agreement Non-Compete is an invalid and
unenforceable restraint of trade ................................... 21

iii.    The District Court Correctly Determined that LKQ is not
seeking to protect a valid business interest through the
Confidentiality Agreement Non-Compete .................................. 24

iv.    The Confidentiality Agreement Non-Compete also lacks
consideration ................................................................ 26

v.    The District Court Correctly Determined that Blue-
Penciling the Confidentiality Agreement Non-Compete is
Inappropriate .............................................................. 27

C.    The District Court correctly dismissed LKQ's claim for unjust
enrichment .................................................................................. 28

i.    Standard of Review .................................................... 28

ii.    The District Court correctly determined that LKQ pleaded
itself out of an unjust enrichment claim .................................... 28

CONCLUSION ........................................................................................ 31

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)(7) ........................ 32

CERTIFICATE OF SERVICE ........................................................................ 33

4894-8702-4257, v. 6

# Table of Authorities

## Cases

*Ainslie v. Cantor Fitzgerald*,
   No. 9436-VCZ, 2022 WL 18107003
   (Del. Ct. Chan. Jan. 4, 2022) ........................................................................... passim

*Caras v. Am. Original Corp.*,
   1987 WL 15553 (Del. Ct. Chan. July 31, 1987)....................................................... 13

*Cinelli v. Am. Home Prods. Corp.*,
   785 F.2d 264 (10th Cir. 1986) .................................................................................. 17

*Cromeens, Hollman, Sibert, Inc. v. AB Volvo*,
   349 F.3d 376 (7th Cir. 2003) .................................................................................... 29

*Erie R. Co. v. Tompkins*,
   340 U.S. 64 (1938) .................................................................................................... 16

*Fifield v. Premier Dealer Servs., Inc.*,
   993 N.E.2d 938 (Ill. App. Ct. 2013) ........................................................................ 26

*FP UC Holdings, LLC v. Hamilton*,
   No. 2019-1029-JRS, 2020 WL 1492783
   (Del. Ct. Chan. March 27, 2020) ....................................................................... 13, 14

*Hay Grp., Inc. v. Bassick*,
   No. 02 C 8194, 2005 WL 2420415
   (N.D. Ill. Sept. 29, 2005) ............................................................................. 21, 23, 27

*Hess v. Kanoski & Assocs.*,
   668 F.3d 446 (7th Cir. 2012) .................................................................................... 29

*Indus. Lift Truck Servs. Corp. v. Mitsubishi Int'l Corp.*,
   432 N.E.2d 999 (Ill. App. Ct. 1982) ........................................................................ 28

*JP Morgan Chase & Co. v. Pierce*,
   517 F. Supp. 2d 954 (E.D. Mich. 2007)......................................................... 17, 18, 19

*Lawrence & Allen, Inc. v. Cambridge Human Resource Grp., Inc.*,
   292 Ill. App. 3d 131 (1997)....................................................................................... 25

*Lucente v. IBM Corp.*,
   75 F. Supp. 2d 169 (S.D.N.Y. 1999) ........................................................................ 17

4894-8702-4257, v. 6

*Medix Staffing Solutions, Inc. v. Dumrauf*,
No. 17 C 6648, 2018 WL 1859039
(N.D. Ill. April 17, 2018) .................................................................. 22, 27

*Pollard v. Autotote, Ltd.*,
852 F.2d 67 (3d Cir. 1988)...................................................................... 13

*Prairie Rheumatology Assoc. v. Francis*,
24 N.E.3d 58, 2014 IL App (3d) 140338 (Ill. App. Cr. 2014) ........................... 26, 27

*Reliable Fire Equip. Co. v. Arredondo*,
965 N.E.2d 393, 2011 IL 111871 (Ill. 2011) ...................................... 21, 25

*Stericycle, Inc. v. Carney*,
No. 12 C 9130, 2013 WL 3671288 (N.D. Ill. July 12, 2013)................................... 28

*Stevens v. Interactive Fin. Advisors, Inc.*,
11 C 2223, 2015 WL 791384 (N.D. Ill. Feb. 24, 2015) ........................................... 28

*Stunfence, Inc. v. Gallagher Security (USA), Inc.*,
No. 01 C 9627, 2002 WL 1838128 (N.D. Ill. Aug. 12, 2002) ........................ 24, 27

*Tasktop Techs. US Inc. v. McGowan*,
No. 18-1075-RGA, 2018 WL 4938570 (D. Del. Oct. 11, 2018) ............................... 14

*Tatom v. Ameritech*,
305 F.3d 737 (7th Cir. 2002) .................................................................. 16

*Utility Audit, Inc. v. Horace Mann Serv. Corp.*,
383 F.3d 683 (7th Cir. 2004) .................................................................. 28

*WR Berkley Corp. v. Dunai*,
1:19-cv-1223, 2021 WL 1751347 (D. Del. May 4, 2021) ............................. 17, 18, 19

*WR Berkley Corp. v. Hall*,
No. 03C-12-146WCC, 2005 WL 406348
(Del. Super. Ct. Feb. 16, 2005).................................................. 17, 18, 19

## Other Authorities

Black's Law Dictionary (11th Ed. 2019) .................................................... 19

FTC PROPOSES RULE TO BAN NONCOMPETE CLAUSES, WHICH HURT WORKERS AND
HARM COMPETITION, U.S. FED. TRADE COMM'N, https://www.ftc.gov/news-
events/news/press-releases/2023/01/ftc-proposes-rule-ban-noncompete-clauses-
which-hurt-workers-harm-competition (last visited Feb. 13, 2023)......................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................. 12

4894-8702-4257, v. 6

## Jurisdictional Statement

The Appellant's jurisdictional summary in the appellant's brief is complete and correct.

4894-8702-4257, v. 6

## Introduction

LKQ Corporation ("LKQ") filed its original Complaint in this matter claiming breaches of various restrictive covenants contained in two sets of agreements. Among other allegations, the Original Complaint claimed that Robert Rutledge ("Rutledge") potentially disclosed LKQ's confidential information and breached provisions barring the solicitation of LKQ's customers and employees. LKQ had no evidence to support these allegations when they were made. Discovery did not provide the evidence LKQ lacked. As a result, LKQ filed the First Amended Complaint to remove the allegations of solicitation and misuse of confidential information. ECF No. 23, at PageID #:373, at ¶ 12.

The First Amended Complaint claimed Rutledge violated the terms of two sets of non-compete provisions. The alleged violations are based on Rutledge's work-from-home employment with third-party Fenix Auto Parts despite Rutledge not engaging in job duties that are similar to those he performed at LKQ. LKQ sought to recover over three hundred thousand dollars Rutledge received as part of his employment compensation going back to 2013 – ten years ago. LKQ filed its lawsuit despite the fact that its own internal investigation showed no evidence Rutledge solicited a single LKQ customer, vendor, or employee, and that Rutledge did not take any LKQ confidential information.

The first non-compete provision (the "RSU Non-Compete") is found in certain Restricted Stock Unit Agreements. The second non-compete provision (the "Confidentiality Agreement Non-Compete") is found in certain Confidentiality, Non-

Competition, and Non-Solicitation Agreements. LKQ admits the non-competes seek to bar Rutledge from any type of employment anywhere in the country with a competitor of LKQ regardless of the scope of the employment.

The District Court properly entered summary judgment in favor of Rutledge and against LKQ finding the RSU Non-Compete and Confidentiality Agreement unenforceable as unreasonable restraints of trade because they are overbroad and effectively bar all employment with any company in LKQ's international footprint. LKQ's lawsuit against Rutledge is the first time it has sued to enforce the RSU Non-Compete. This is likely because the RSU Non-Compete is so far afield of Delaware law. The District Court also correctly entered summary judgment in favor of Rutledge and against LKQ finding the Confidentiality Agreement Non-Compete unenforceable because it does not protect a valid business interest.

LKQ's attempt to enforce a non-compete when there is no evidence of improper solicitation or information disclosure is the sort of behavior the United States Federal Trade Commission ("FTC") has recently decided to prevent. FTC PROPOSES RULE TO BAN NONCOMPETE CLAUSES, WHICH HURT WORKERS AND HARM COMPETITION, U.S. FED. TRADE COMM'N, https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-proposes-rule-ban-noncompete-clauses-which-hurt-workers-harm-competition (last visited Feb. 13, 2023). As noted by the FTC, non-competes harm competition by blocking workers from pursuing better opportunities. The FTC expressly recognized the difference between non-compete provisions and narrow non-solicitation and non-disclosure provisions. But, as LKQ

freely admits, the RSU Non-Compete is not narrow but designed purely to stifle competition by preventing employment with any competitor of LKQ, anywhere, in any capacity.

Finally, the District Court properly dismissed LKQ's unjust enrichment claim. Illinois law prevents a party from seeking unjust enrichment based on conduct arising under the terms of an express contract between the parties. This is exactly what LKQ alleged.

The District Court correctly saw LKQ's actions for what they were: an impermissible attempt to retrain post-employment conduct and to claw back over ten years of earned employment consideration. The District Court should be affirmed in full.

4894-8702-4257, v. 6

## Statement of the Case

LKQ is the largest national supplier of salvaged and recycled automobile parts. ECF No. 79, at PageID. #:1286, at ¶ 1. Rutledge began working for LKQ on or about October 1, 2009. *Id.* at ¶ 2. Prior to working for LKQ, Rutledge worked at a company called Greenleaf beginning in 2001. *Id.* at ¶ 3. Greenleaf was also in the auto salvage and recycling business and was purchased by LKQ. *Id.* at ¶¶ 4, 5. Therefore, Rutledge's entire career has been spent in the auto salvage and recycling business. ECF No. 79, at PageID. #:1287, at ¶ 6.

While at LKQ, Rutledge was always employed as a Plant Manager of LKQ's Lake City, Florida plant. *Id.* at ¶ 7. Rutledge's job duties as a Plant Manager included overseeing all departments at the facility, overseeing the daily operations of the plant from selling and delivering parts to local customers, hiring and firing facility employees, and he would look at daily revenue and had access to customer lists. *Id.* at ¶¶ 8, 9. Rutledge was not responsible for customer service or sales. *Id.* at ¶ 10. Rutledge was required to physically be at his LKQ facility. *Id.* at ¶ 11.

### A. Rutledge enters two separate agreements, both of which contain non-compete restrictive covenants.

As part of his employment compensation with LKQ, Rutledge entered into Restricted Stock Unit Agreements with LKQ. *Id.* at ¶ 12. The Restricted Stock Unit Agreements have a restrictive covenant section titled "Non-Competition and Confidentiality." (the "RSU Non-Compete"). *Id.* at ¶ 13. The RSU Non-Compete purports to prevent Rutledge from:

> directly or indirectly (1) be[ing] employed by, engage or have any interest in any business which is or becomes competitive with [LKQ] or its subsidiaries or is or becomes otherwise prejudicial to or in conflict with the interests of [LKQ] or its subsidiaries.

ECF No. 79, at PageID. #:1287–88, at ¶ 14. The Restricted Stock Unit Agreements provided Rutledge with a certain number of shares in LKQ stock that he could cash out or sell based on a set vesting schedule. ECF No. 79, at PageID. #:1288, at ¶ 15. The Restricted Stock Units are part of Rutledge's wages, benefits, and overall compensation tied to his employment. *Id.* at ¶¶ 16, 18. The Restricted Stock Unit Agreements did not provide stock options. *Id.* at ¶ 17. Payments to Rutledge based on cashing his Restricted Stock Units would be made through LKQ payroll. *Id.* at ¶ 18.

Rutledge also signed Confidentiality, Non-Competition, and Non-Solicitation Agreements that also include a restrictive covenant (the "Confidentiality Agreement Non-Compete"), which purports to prevent Rutledge from:

> directly or indirectly, either for [Rutledge] or for any other person or entity . . . engage in, represent, furnish consulting services to, be employed by . . . any business that would be competitive with any business conducted by [LKQ] or its subsidiaries on the date of this Agreement or any other business conducted by [LKQ] or its subsidiaries during [Rutledge]'s employment, anywhere within a 75 mile radius of any facility of [LKQ] or its subsidiaries at which [Rutledge] worked or over which [Rutledge] exercised managerial control while employed by [LKQ].

ECF No. 79, at PageID. #:1288–89, at ¶ 19. The Confidentiality Agreement Non-Compete was tied to Rutledge signing the Restricted Stock Unit Agreements. *Id.* at ¶ 20. Both the RSU Non-Compete and Confidentiality Agreement Non-Compete have a restrictive period of nine-months. ECF No. 79, at PageID. #:1290, at ¶ 24.

4894-8702-4257, v. 6

**B. Rutledge resigns from LKQ and begins working for Fenix Auto Parts.**

Rutledge tendered his resignation from LKQ on March 23, 2021. ECF No. 79, at PageID. #:1291, at ¶ 29. On April 14, 2021, Rutledge stopped working for LKQ. *Id.* at ¶ 30. Nine-months from April 14, 2021 is January 14, 2022. *Id.* at ¶ 31. Therefore, the restrictive covenants, to the extent they are enforceable, ended on January 14, 2022.

Rutledge lives within 75 miles of LKQ's Lake City facility. *Id.* at ¶ 35. Rutledge began working for Fenix Auto Parts ("Fenix") on April 19, 2021. *Id.* at ¶ 32. Rutledge began his employment at Fenix as Vice President of Capital Projects or Vice President of Capital Procurement and Projects. *Id.* at ¶ 33. As Vice President of Capital Projects, Rutledge worked at home or physically in Houston, with approximately 50% of his work occurring at home. *Id.* at ¶ 34. Rutledge did not perform work for any Fenix facility located within 75 miles of LKQ's Lake City facility. *Id.* at ¶ 36. As Vice President of Capital Projects, Rutledge oversaw large projects that were outside the normal buying of inventory, and purchased long-term vehicle assets. ECF No. 79, at PageID. #:1292, at ¶ 37. Rutledge was not involved in purchasing cars that Fenix stripped for OEM parts to be resold to consumers. *Id.* at ¶ 38. In April 2022, Rutledge's job at Fenix was shifted to area director after the person previously in that position was promoted. *Id.* at ¶ 39. This is more than nine months after Rutledge stopped working for LKQ. *Id.* at ¶ 40.

### C. LKQ's justification for enforcing overbroad restrictive covenants.

LKQ contends that by working for Fenix, Rutledge is harming LKQ's vendor and supplier relationships. ECF No. 79, at PageID. #:1293, at ¶ 47. Through the RSU Non-Compete and Confidentiality Agreement Non-Compete, LKQ seeks to protect specific customer pricing, customer discounts, customer contact information, vendor and supplier pricing, any potential rebates, financial information, revenue, margin data, expense data, profitability data, and any marketing strategies for Rutledge's market. ECF No. 79, at PageID. #:1290, at ¶ 25. LKQ only protects this through the RSU Non-Competes and Confidentiality Agreement Non-Competes. *Id.* at ¶ 26. Despite this, there are employees of LKQ with access to its customer information, financial information, and other confidential and proprietary information that are not subject to restrictive covenants. *Id.* at ¶ 27. LKQ's sales team members have access to this information but are not subject to non-competes. ECF No. 79, at PageID. #:1291, at ¶ 28.

LKQ considers it a violation of both the RSU Non-Compete and Confidentiality Agreement Non-Compete to work for a competitor in any capacity during the restrictive period, even as a janitor, administrative assistant, or mailroom personnel. ECF No. 79, at PageID. #:1290, at ¶ 22. LKQ believes Rutledge's job duties and responsibilities are irrelevant since his new job is with a competitor. *Id.* at ¶ 23.

Rutledge did not solicit any LKQ customer or any LKQ employee. ECF No. 79, at PageID. #:1293, at ¶¶ 48, 49. Rutledge did not misappropriate any LKQ confidential information. *Id.* at ¶ 50.

### D. LKQ's pre-suit investigation of its claims revealed Rutledge did not harm LKQ.

LKQ conducted a pre-suit investigation. *Id.* at ¶ 51. LKQ's pre-suit investigation included running a sales trend report that demonstrated nothing suspicious. *Id.* at ¶ 52. LKQ's pre-suit investigation included interviewing LKQ employees that uncovered no evidence of solicitation. *Id.* at ¶ 53. LKQ's pre-suit investigation did not uncover any evidence that Rutledge had contacted LKQ customers. ECF No. 79, at PageID. #:1294, at ¶ 54. LKQ's pre-suit investigation also did not uncover any evidence that Rutledge had contacted vendors of LKQ. *Id.* at ¶ 55. LKQ's continued investigation has uncovered no solicitation of any LKQ customer. *Id.* at ¶ 56. In fact, there is no evidence that Rutledge has solicited any employee, vendor, supplier, or customer of LKQ. The only basis on which LKQ has asserts that Rutledge allegedly violated any restrictive covenant with LKQ is the mere fact of Rutledge's employment with Fenix. *Id.* at ¶ 57.

### E. Proceedings Below.

On June 4, 2021, LKQ Corporation ("LKQ") filed a Complaint in this matter claiming breaches of various restrictive covenants contained in two sets of agreements. *See* ECF No. 1. Among other allegations, the Original Complaint claimed that Rutledge potentially disclosed LKQ's confidential information and breached provisions barring the solicitation of LKQ's customers and employees.

ECF No. 23, at PageID #:372, at ¶ 10. LKQ had no evidence to support these allegations when they were made. ECF No. 79, at PageID. #:1293–94, at ¶¶ 51–55. Discovery did not provide the evidence LKQ lacked. ECF No. 79, at PageID. #:1294, at ¶¶ 56, 57; ECF No. 23, at PageID #:372, at ¶ 11.

The First Amended Complaint claims Rutledge violated the terms of only two sets of non-compete provisions. The First Amended Complaint removed allegations of solicitation and misuse of confidential information contained in the Original Complaint. ECF No. 23, at PageID #:373, at ¶ 12; *see generally,* ECF No. 25. Rutledge moved to dismiss the First Amended Complaint. *See* ECF Nos. 28 & 29. As a result, the District Court dismissed LKQ's claim for unjust enrichment. SA11–13.

After discovery, the parties each moved for summary judgment on LKQ's claim for breach of the RSU Non-Compete. *See* ECF No. 77, 78 & 80. Rutledge also moved for summary judgment on LKQ's claim for breach of the Confidentiality Agreement Non-Compete. *See* ECF No. 77, 78. The District Court entered judgment in favor of Rutledge on both claims. SA24–36.

9

## Statement of the Issues

1.     Did the District Court correctly determine that the RSU Non-Compete is an unreasonable restraint of trade under Delaware law and therefore unenforceable?

2.     Did the District Court correctly determine that the Confidentiality Agreement Non-Compete was not protecting a legitimate business interest and is an unreasonable restraint of trade under Illinois law and therefore unenforceable?

3.     Did the District Court correctly dismiss LKQ's Illinois unjust enrichment claim because it arises out of an express contract between LKQ and Rutledge?

4894-8702-4257, v. 6

## Summary of the Argument

The Amended Complaint alleges that Rutledge's work-from-home employment with third-party Fenix Auto Parts violated the RSU Non-Compete and Confidentiality Agreement Non-Compete despite Rutledge not engaging in job duties similar to those he performed at LKQ. In effect, LKQ sought an unlawful restraint of trade. As the District Court properly recognized, LKQ cannot sustain its claims under the First Amended Complaint.

The non-compete provision in the Restricted Stock Unit Agreements is unlawfully overbroad. LKQ admits this non-compete seeks to bar Rutledge from any type of employment anywhere in the country with a competitor of LKQ regardless of the scope of the employment. The non-compete provision in the Confidentiality, Non-Competition, and Non-Solicitation Agreements fares no better. This non-compete is also overbroad, does not protect a legitimate business interest, and lacks consideration.

The District Court was also correct in dismissing LKQ's Illinois unjust enrichment claim. LKQ's unjust enrichment claim asserts it is unjust for Rutledge to retain the benefit of the RSUs already granted to him under the RSU Agreements. As a result, LKQ pleads itself out of a claim. An unjust enrichment claim cannot survive when it is based on conduct arising out of a contract between the parties.

The District Court correctly entered judgment against LKQ and should be affirmed.

## Argument

The District Court correctly determined that the RSU Non-Compete and Confidentiality Agreement Non-Compete are unenforceable restraints of trade. The dismissal of LKQ's unjust enrichment claim pursuant to Rule 12(b)(6) was also correct. These decisions of the District Court in favor of Rutledge should be affirmed.

### A. The District Court correctly found RSU Non-Compete is an invalid and unenforceable restraint of trade.

#### i.  Standard of Review

Rutledge agrees the standard of review on the District Court's grant of summary judgment in favor of Rutledge on Count I of the Amended Complaint is *de novo*.

#### ii.  The RSU Non-Compete is unenforceable under Delaware law.

LKQ seeks to enforce the non-compete restrictive covenant contained in the RSU Non-Compete. ECF No. 25, PageID #:440–443. The RSU Non-Compete states Rutledge cannot:

> directly or indirectly (1) be employed by, engage or have any interest in any business which is or becomes competitive with [LKQ] or its subsidiaries or is or becomes otherwise prejudicial to or in conflict with the interests of [LKQ] or its subsidiaries.

Rutledge LR 56.1 Stmt. of Facts, at ¶ 14. There is no geographic limitation, and the scope of covered businesses (those that are prejudicial to or in conflict with LKQ) is effectively limitless. As a result, it is unenforceable as an invalid restraint of trade.

12

The parties agree Delaware law applies to the enforcement of the RSU Non-Compete. Under Delaware law, a post-employment restrictive covenant is reasonable only if it: (1) is no greater than is required in temporal and geographic scope for the protection of a legitimate business interest of the employer; (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *FP UC Holdings, LLC v. Hamilton*, No. 2019-1029-JRS, 2020 WL 1492783, at *6–7 (Del. Ct. Chan. March 27, 2020). Total restraints on trade are unenforceable. *Id.* at *6. Non-competes with overbroad or no geographic scope are unenforceable. *Id.*; *Caras v. Am. Original Corp.*, 1987 WL 15553, at *2 (Del. Ct. Chan. July 31, 1987). It is well-settled under Delaware law that the RSU Non-Compete, which bars all employment with a competitor regardless of the location or work performed, is unenforceable.

Effectively conceding that the RSU Non-Compete is unenforceable, LKQ seeks to recast the restrictive covenant as a forfeiture provision. Yet, this is belied by the language of the RSU Agreement itself. The RSU Non-Compete provision at issue is titled "Non-Competition and Confidentiality." *Id.* at ¶ 13. The language chosen by LKQ therefore demonstrates that LKQ understands and intended the restrictive covenant as a non-compete.

Regardless, under Delaware law, a forfeiture of benefits provision is subject to the same reasonableness inquiry as any other restrictive covenant. *Ainslie v. Cantor Fitzgerald*, No. 9436-VCZ, 2022 WL 18107003, at *24 (Del. Ct. Chan. Jan. 4, 2022); *also Pollard v. Autotote, Ltd.*, 852 F.2d 67, 72 (3d Cir. 1988). A forfeiture

13

provision designed to dissuade competition and untethered to any harm to the employer is unenforceable as a disfavored liquidated damages clause. *Ainslie*, 2023 WL 106924, at *22–24. Damages for an employment restrictive covenant cannot be unrelated to actual damage to the employer. *Id.* at *23. As explained below, the RSU Non-Compete is unreasonable and unenforceable because it fails Delaware's reasonable inquiry.

The RSU Non-Compete contains almost identical language to non-compete provisions consistently invalidated by Delaware courts. In *FP UC Holdings, LLC*, the Delaware Chancery Court denied a motion for preliminary injunction seeking to enforce a non-compete because of a lack of likelihood of success on the merits. 2020 WL 1492783, at *6. The non-compete at issue in that case stated:

> **[the defendants] shall not** ... **directly or indirectly**, own any interest in, manage, control, **participate in (whether as** an owner, operator, manager, consultant, officer, director, **employee**, investor, agent, representative or otherwise), consult with, **render services for or otherwise engage in any business** or entity **which** directly or indirectly **engages in any business that [plaintiff] conducts or proposes to conduct** during the Restricted Period **anywhere in the United States** where [plaintiff] operates or **proposes to operate.**

*Id.* at *3. (emphasis in original). The court found the breadth of this non-compete provision invalidating when it barred any nationwide employment in any business competitive to that of plaintiff. *Id.* at *7.

In *Tasktop Techs. US Inc. v. McGowan*, the non-compete at issue prevented the defendant from any employment with a broadly defined "competitive business" of the plaintiff without a geographic limitation. No. 18-1075-RGA, 2018 WL 4938570, at *6 (D. Del. Oct. 11, 2018). The District of Delaware found a post-

14

employment restrictive covenant for any competing business without a geographic limitation unreasonable. *Id.* at *6 ("Given the extensive geographic area and competitive businesses encompassed by the Agreement, the Court finds the Agreement is unreasonably broad.").

In *Ainslie*, the non-compete barred work for any competing business without geographic scope. 2022 WL 18107003, at *16. The Delaware Chancery Court found the lack of geographic scope presumptively unreasonable. *Id.* at *17. The restrictive covenant at issue applied to any "affiliated entity" of the employer and precluded taking action that results in revenue for a competing company. *Id.* at *18. The Court determined such language was overbroad and vague to the point of being unenforceable. *Id.*

The language chosen by LKQ is even broader than non-compete language Delaware courts consistently find unenforceable as an unreasonable restraint of trade. A comparison of the RSU Non-Compete and invalidated non-competes is instructive:

| RSU Non-Compete | *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *3 | *Ainslie v. Cantor Fitzgerald*, 2023 WL 106924, at *3 |
|---|---|---|
| directly or indirectly (1) be[ing] employed by, engage or have any interest in any business which is or becomes competitive with [LKQ] or its subsidiaries or is or becomes | Directly or indirectly, own any interest in, manage, control, participate in (whether as an owner, operator, manager, consultant, officer, director, employee, investor, agent, representative or otherwise), consult with, render services for or otherwise engage in any business or entity which directly or indirectly engages in any | directly or indirectly engages in, represents in any way, or is connected with, any Competing Business . . . [A Competing Business is one that is] directly competing with the business of the Partnership or of any Affiliated Entity, |

| RSU Non-Compete | *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *3 | *Ainslie v. Cantor Fitzgerald*, 2023 WL 106924, at *3 |
|---|---|---|
| otherwise prejudicial to or in conflict with the interests of [LKQ] or its subsidiaries | business that [plaintiff] conducts or proposes to conduct during the Restricted Period anywhere in the United States where [plaintiff] operates or proposes to operate. | whether such engagement shall be as an officer, director, owner, employee, partner, consultant, affiliate or other participant in any Competing Business. |

The LKQ RSU Non-Compete bars working for any company that is prejudicial or in conflict with LKQ. LKQ admits the RSU Non-Compete is designed to bar any employment with any potentially competitive company in any capacity – even as a janitor, administrative assistant, or mailroom personnel. Rutledge LR 56.1 Stmt. of Facts, at ¶¶ 22–23. LKQ cannot bar Rutledge from working in any capacity for any business that is competitive with LKQ under Delaware law. The restriction is unlawfully overbroad.

### iii.    The cases relied on by LKQ are inapt.

First, LKQ contends there is a general distinction between provisions that prevent an employee from working for a competitor and those that call for a forfeiture of certain benefits should an employee do so. Appellant Brief, at 33. This position is inconsistent with Delaware law, as noted above. Moreover, LKQ's cases are not on point. LKQ's quotation of *Tatom v. Ameritech* appears to rely on federal common law, 305 F.3d 737, 744 (7th Cir. 2002), which does not exist. *See Erie R. Co. v. Tompkins*, 340 U.S. 64, 78 (1938) ("There is no federal general common law."). Moreover, *Tatom* does not include a clawback attempt. *Tatom*, 305 F.3d at 744.

*Lucente* applies New York law and does not have a clawback provision. *Lucente v. IBM Corp.*, 75 F. Supp. 2d 169, 171–72 (S.D.N.Y. 1999). *Cinelli* was decided under the Sherman Act, applies New York law, and there was no clawback provision. *Cinelli v. Am. Home Prods. Corp.*, 785 F.2d 264, 266–67 (10th Cir. 1986).

Second, LKQ relies heavily on *Pierce*, *Hall*, and *Dunai* to support its claim that RSU is not an unenforceable restraint of trade. The Court should ignore these cases as they do not apply legally or factually.

1. *Pierce, Hall,* and *Dunai* were decided under an inapplicable arbitrary and capricious standard tasked with reviewing a corporate decision.

*Pierce*, *Hall*, and *Dunai* were decided under an arbitrary and capricious standard because the court was tasked with reviewing a corporate administrative committee decision. *JP Morgan Chase & Co. v. Pierce*, 517 F. Supp. 2d 954, 962 (E.D. Mich. 2007); *WR Berkley Corp. v. Dunai*, 1:19-cv-1223, 2021 WL 1751347, at *1 (D. Del. May 4, 2021); *WR Berkley Corp. v. Hall*, No. 03C-12-146WCC, 2005 WL 406348, at *4 (Del. Super. Ct. Feb. 16, 2005).

In *Pierce*, the court based its review on the principal that "if a stock option compensation plan authorizes the corporate decision-maker to interpret the plan and issue final and binding plan decisions, a court will uphold a decision if it is consistent with the plan language" including the board's interpretation of the contract. *Pierce*, 517 F. Supp. 2d at 959–60. The *Pierce* court distinguished this principal from other cases in which a *de novo* standard was applied to review a case where there was no express delegation of corporate authority. *Id.* at 960. LKQ cites

17

*Pierce* out of context in an attempt to avoid this distinction that undermines LKQ's entire reliance on these cases.

In this case, there is no corporate administrative decision. LKQ seeks to enforce the language of employment related restrictive covenants. *Pierce*, *Hall*, and *Dunai* apply the wrong standard to different facts and these cases should be ignored. Even if the Court were to consider *Pierce*, *Hall*, and *Dunai*, the restrictive covenants in those cases are narrower than the RSU Non-Compete.

        2.   <u>*Pierce*, *Hall*, and *Dunai* sought claw-back of stock option gains under a much narrower time frame that is not materially prejudicial to its former employees.</u>

In *Pierce*, *Hall*, and *Dunai*, the employer only sought the return of *gains* on stock options over a specific, short period before the covenant breach. They did not seek a forfeiture of the entirety of the value of the stock issued. *Pierce*, 517 F. Supp. 2d at 956–57 (only sought gains on exercise of stock options for prior year); *Dunai*, 2021 WL 1751347, at *1 (same); *Hall*, 2005 WL 406348, at *2 (only sought gains on sale of stock options for prior six months).

Despite several opportunities to address this distinguishing fact, LKQ still has not. LKQ seeks the return of the entire value of the RSUs sold by Rutledge for the past <u>*ten years*</u>. LKQ also does not seek the gains based on stock sales like *Pierce*, *Hall*, and *Dunai*. As LKQ admits, the RSUs are not stock options, which is what LKQ's cases seek to claw-back in a limited fashion. ECF No. 85, at ¶ 17, PageID #:2244. The fact the RSUs are not stock options is an important distinction. Stock options permit an individual to purchase stock at a specific price at a specific time

18

regardless of the market price. Black's Law Dictionary (11th Ed. 2019). The Restricted Stock Units that were part of Rutledge's employment were granted at the time in which the RSU was entered and vested on a set schedule in the future. A significant difference is that stock options are granted at strike prices lower than the trading value of the stock providing a great benefit to the individual owning the option through the grant of an immediate increase in value once the stock options are granted. This is not present in this case.

3.  <u>The non-compete language in *Pierce, Hall,* and *Dunai* is narrower.</u>

In *Pierce*, the defendant former employee was a senior vice president in charge of three hundred and fifty (350) branches. *Pierce*, 517 F. Supp. 2d at 956. A restrictive covenant in the stock option agreements prevented the defendant from "performing the **same or substantially similar functions** . . . in a manner which is or may reasonably be expected to be" competitive with her former employer. *Id.* at 956. (emphasis added). The defendant left to become the CEO of a competitor. *Id.* at 964. In *Dunai*, a decision made in response to a motion to dismiss, the former employee was a corporate vice president that took a similar position with a competitor. *Dunai*, 2021 WL 1751347, at *1. Similarly, in *Hall* the former employee was awarded stock options as a top three employee at his former employer. *Hall*, 2005 WL 406348, at *1.

Simply put, *Pierce, Hall,* and *Dunai,* are distinguishable on their standard of review and the facts. Most important, they predate *Ainslie*, the most recent Delaware case on the issue.

19

LKQ's attempt to distinguish *Ainslie* falls flat. First, LKQ attempts to denigrate *Ainslie* by stating it is an opinion for an intermediate Delaware appellate court. Appellant Brief, at 43. Yet, LKQ's supporting caselaw is largely from non-Delaware Courts and also from courts of a similar level. Second, despite LKQ's attempt, *Ainslie* is on point. The court specifically stated that *Ainslie* presents an opportunity to outline what type of provisions are subject to a reasonableness analysis under Delaware law. *Ainslie*, 2022 WL 18107003, at *1. Therefore, this most recent Delaware case specifically addresses LKQ's argument and decides against LKQ. The *Ainslie* court described the non-compete in that case as a "forfeiture-for-competition" clause that causes a former employee to lose a benefit if they compete with their former employer. *Id.* at *20. This is exactly how LKQ understands and intended the RSU Non-Compete to act. As the *Ainslie* court and the District Court recognized, these provisions impact the same policy decisions of traditional restrictive covenants. *Id.* at *24; SA27–29. *Ainslie* applies to this case and undermines LKQ's arguments for enforceability of the RSU Non-Compete.

The District Court's grant of summary judgment in favor of Rutledge on Count I of LKQ's Amended Complaint should be affirmed.

**B. The District Court correctly found that the Confidentiality Agreement Non-Compete is unenforceable and Rutledge did not violate its terms.**

      **i.    Standard of Review**

Rutledge agrees the standard of review on the District Court's grant of summary judgment in favor of Rutledge on Count II of the Amended Complaint is *de novo.*

      **ii.    The District Court correctly determined that the Confidentiality Agreement Non-Compete is an invalid and unenforceable restraint of trade.**

The Confidentiality Agreement Non-Compete cannot be enforced because it is hopelessly overbroad.

The parties agree that Illinois law applies to the enforceability of the Confidentiality Agreement Non-Compete. In Illinois, a post-employment restrictive covenant is reasonable only if it: (1) is no greater than is required for the protection of a legitimate business interest of the employer; (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97, 2011 IL 111871, at ¶ 17 (Ill. 2011). Total restraints on trade are unenforceable and the employer needs to protect more than mere competition. *Hay Grp., Inc. v. Bassick*, No. 02 C 8194, 2005 WL 2420415, at *3 (N.D. Ill. Sept. 29, 2005). Yet, this is all LKQ seeks to prevent. LKQ's corporate representative testified as to the corporate policy underlying this provision – that working for a competitor in any manner including as a janitor, administrative

assistant, or mailroom personnel is a violation. *See* ECF 79, at PageID.1290, at

¶ 22.

The Confidentiality Agreement Non-Compete purports to prevent Rutledge

from:

> directly or indirectly, either for [Rutledge] or for any other person or entity . . . engage in, represent, furnish consulting services to, be employed by . . . any business that would be competitive with any business conducted by [LKQ] or its subsidiaries on the date of this Agreement or any other business conducted by [LKQ] or its subsidiaries during [Rutledge]'s employment, anywhere within a 75 mile radius of any facility of [LKQ] or its subsidiaries at which [Rutledge] worked or over which [Rutledge] exercised managerial control while employed by [LKQ].

*Id.* PageID.1288–89, at ¶ 19. This is almost identical language to other non-compete

provisions that Illinois courts have found to be unenforceable because of

overbreadth.

In *Medix Staffing Solutions, Inc. v. Dumrauf*, the non-compete at

issue stated:

> [B[oth during Employee's employment with Medix and for a period of eighteen (18) months following the termination of Employee's employment with Medix for any reason, Employee shall not, within a radius of 50 miles from any Medix office(s) where the Employee performed services as an employee of Medix, directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of, any business that either: (1) offers a product or services in actual competition with Medix; or (ii) which may be engaged directly or indirectly in the Business of Medix.

No. 17 C 6648, 2018 WL 1859039, at *1 (N.D. Ill. April 17, 2018). "Business" was

defined as "the business of providing staffing and recruiting options for clients and

candidates across the professional services, life sciences, healthcare and information

technology industries." *Id.* at *3. The district court granted a motion to dismiss because the non-compete was unenforceable on its face. *Id.* Illinois law does not permit a limitless non-compete that prevents a former employee from being employed in any capacity with a competitor regardless of whether the new job is competitive with the business interests of the old company. *Id.* Non-compete provisions are unenforceable as a matter of law unless they are connected to the work performed by the former employee. *Id.*

> In *Hay Grp., Inc.*, the non-compete at issue stated:
>
> *Covenant Not to Compete.* During his employment and for two (2) years thereafter, the Executive shall not directly or indirectly, own, manage, operate, control, be employed by or participate in the ownership, management, operation or control of, or be connected in any manner with any business of the type and character engaged in and competitive with that conducted by Employer and the other members of the Affiliated Group.
> ….
>
> As used below, "Employer" shall mean the Employer and the other members of the Affiliated Group. Without limiting in any way the generality of the foregoing, the Executive, during such period, specifically shall not, directly or indirectly:
> ....
>
> (f) engage in any business which is competitive with, in whole or in part, the business of the Employer.

2005 WL 2420415, at *3. In granting the defendant's motion for summary judgment, the district court found that "Even a cursory reading of these provisions makes it clear that the effect of the [] Noncompete is to prohibit [Defendant] from engaging in any sort of competition with [Plaintiff company]." *Id.* Such a restriction is an unreasonable restraint of trade and invalid. *Id.*

4894-8702-4257, v. 6

In *Stunfence, Inc. v. Gallagher Security (USA), Inc.*, the non-compete at issue prevented participation in the former employee's chosen field without geographic restriction. No. 01 C 9627, 2002 WL 1838128, at *6–7 (N.D. Ill. Aug. 12, 2002). Because the non-compete was not limited to activities similar to those the former employee performed for the employer it was unreasonable. *Id.* at *7.

In this case, the Confidentiality Agreement Non-Compete is also unenforceable. As LKQ admits, and the District Court properly found, the Confidentiality Agreement Non-Compete prevents Rutledge from working for any competitor of LKQ in any capacity. This is not permissible under Illinois law. The District Court correctly determined this is unenforceable as a matter of law in Illinois. The District Court correctly entered judgment in favor of Rutledge on Count II of the Amended Complaint.

> ### iii.    The District Court Correctly Determined that LKQ is not seeking to protect a valid business interest through the Confidentiality Agreement Non-Compete.

In addition to being invalid as an unlawful restraint of trade, the Confidentiality Agreement Non-Compete does not protect a valid employer interest. The District Court correctly found that LKQ's asserted business interests of supplier and vendor relationships is not legally protectable. This is an independent reason to affirm the District Court aside from the determination that the Confidentiality Agreement Non-Compete is an unenforceable restraint of trade.

A post-employment non-compete requires the protection of a legitimate business interest. Generally, a legitimate business interest is the protection of an

employer's confidential information, trade secrets, or customer relationships. *Reliable Fire Equip. Co.*, 965 N.E.2d at 401. A non-compete must be narrowly tailored to protect only activities that threaten the employer's claimed interest. *Lawrence & Allen, Inc. v. Cambridge Human Resource Grp., Inc.*, 292 Ill. App. 3d 131, 140 (1997).

LKQ pleaded the business interests protected were LKQ's vendor and supplier relationships. ECF No. 25, at PageID #:443, 445, at ¶¶ 80, 98. As the District Court correctly determined, these are not valid business interests under Illinois law. SA33 ("This Court was also unable to find a single Illinois case that recognized the protection of supplier and vendor relationships as a legitimate business interest under a non-compete.")

LKQ attempted to expand its claimed business interests beyond its pleading to include customer relationships and confidential information. ECF No. 79, at PageID.1290, at ¶ 25. However, these interests are protected by other restrictive covenants – the non-solicitation covenant and non-disclosure of confidential information covenants. *Id.* PageID.1289–90, at ¶ 21. In this circumstance, the non-compete is unnecessary and unenforceable. In *Lawrence & Allen, Inc.*, the Illinois Appellate Court found that a non-compete provision designed to protect the same interest as a non-solicitation provision renders both provisions overly broad and unenforceable. *Lawrence & Allen, Inc.* , 292 Ill. App. 3d at 141.

Further, the Confidentiality Non-Compete does not further LKQ's claimed legitimate business interest of protecting customer relationships and confidential

25

information. This information is accessible to employees that are not subject to the non-competes. ECF No. 79, at PageID.1290–91, at ¶¶ 26–28. As a result, the alleged confidential information is not kept secret and the non-competes do not serve their alleged purpose.

Simply put, LKQ does not have a legitimate business interest to protect through the enforcement of the Confidentiality Agreement Non-Compete. The District Court's decision granting Rutledge summary judgment on Count II should be affirmed for this separate and independent reason.

### iv. The Confidentiality Agreement Non-Compete also lacks consideration.

An alternative reason to find the Confidentiality Agreement Non-Compete unenforceable is a lack of consideration.

For a restrictive covenant to be enforceable, it must be supported by consideration. *Prairie Rheumatology Assoc. v. Francis*, 24 N.E.3d 58, 62, 2014 IL App (3d) 140338, at ¶ 13 (Ill. App. Cr. 2014); *Fifield v. Premier Dealer Servs., Inc.*, 993 N.E.2d 938, 942 (Ill. App. Ct. 2013). In this case, the consideration for the Confidentiality Agreement Non-Compete is the Restrictive Stock Unit Agreement. Rutledge LR 56.1 Stmt. of Facts, at ¶ 20. However, the Restrictive Stock Unit Agreement has its own restrictive covenant – the RSU Non-Compete. *Id.* at ¶¶ 13, 14.

LKQ cannot have the same consideration – acceptance of RSUs – serve as the consideration for two separate restrictive covenants. Rutledge receives no additional benefit from the Confidentiality Agreement Non-Compete that he does not already

receive in the RSU Non-Compete – meaning there is no consideration. *See Prairie Rheumatology Assoc.*, 24 N.E.2d at 63.

Without consideration for the Confidentiality Agreement Non-Compete, it is unenforceable. This is an additional and alternative reason to affirm the District Court's grant of summary judgment in favor of Rutledge on Count II.

> **v.    The District Court Correctly Determined that Blue-Penciling the Confidentiality Agreement Non-Compete is Inappropriate.**

LKQ contends the District Court should have blue-penciled the non-competes. The District Court properly declined to do so.

Illinois law only permits slight modifications to effectuate the intent of the parties and the degree of unreasonableness in the original provision is a significant factor in whether modification is appropriate. *Hay Grp.*, at 2005 WL 2420415, at \*4; *Stunfence, Inc.*, 2002 WL 1838128, at \*7. When the restraint is patently unfair and overbroad, refusing to blue-pencil is appropriate. *Hay Grp.*, at 2005 WL 2420415, at \*4; *Stunfence, Inc.*, 2002 WL 1838128, at \*7. Blue-penciling overly restrictive and unreasonable restrictive covenants gives employers the perverse incentive to draft the broadest possible restrictive covenant with the fallback of judicial saving if the unlawful restraint of trade is challenged. *Medix Staffing Solutions, Inc.*, 2018 WL 1859039, at \*4; *Stunfence, Inc.*, 2002 WL 1838128, at \*7.

LKQ had the opportunity to draft restrictive covenants that were enforceable yet chose not to. The District Court property did not allow LKQ a do-over and should be affirmed.

### C. The District Court correctly dismissed LKQ's claim for unjust enrichment.

#### i.     Standard of Review

Rutledge agrees the standard of review on the District Court's dismissal in favor of Rutledge on Count III of the Amended Complaint is *de novo*.

#### ii.    The District Court correctly determined that LKQ pleaded itself out of an unjust enrichment claim.

In Count III of the Amended Complaint, LKQ claimed Rutledge was unjustly enriched through LKQ's grant of RSUs to Rutledge. ECF No. 25, at PageID #:446, at ¶¶ 103–106. The District Court correctly determined that Count III fails as a matter of law because it is not pleaded in the alternative and is based on an express contract. SA12–13.

The law in this Circuit and Illinois is clear. "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004). A claim falls within the scope of the parties' contract if the contract and the claim address the "same subject matter." *Indus. Lift Truck Servs. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982); *Stevens v. Interactive Fin. Advisors, Inc.*, 11 C 2223, 2015 WL 791384, at *16–17 (N.D. Ill. Feb. 24, 2015). Specific references to a governing contract doom a claim for unjust enrichment. *Stericycle, Inc. v. Carney*, No. 12 C 9130, 2013 WL 3671288, at *8 (N.D. Ill. July 12, 2013).

LKQ pleads it compensated Rutledge according to the RSU Agreements. ECF No 25, at PageID #:431–32, 435, 446, at ¶¶ 26–28, 36–38, 103–105. The only reason LKQ granted Rutledge RSUs was through the RSU Agreements. *Id.* at PageID #:534, at ¶¶ 36–38. Therefore, there is no dispute that any unjust enrichment claimed by LKQ is tied to the equity compensation provided to Rutledge under the RSU Agreements. LKQ even pleads the unjust enrichment arises from the grant of stock pursuant to LKQ's compensation plan. ECF No 25, at PageID #:446, at ¶ 105. The only reason granting the compensation would be unjust is if Rutledge did not comply with RSU Non-Compete terms. Yet, if there is a contract between two parties, there cannot be unjust enrichment if the benefit was conferred within the subject matter of the contract. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012). LKQ's claim for unjust enrichment must therefore fail because it is within the scope of the RSU Agreement express contracts.

LKQ's own cases support affirmance of the District Court. LKQ cites *Hess v. Kanoski & Assocs.* and *Cromeens, Hollman, Sibert, Inc. v. AB Volvo* in its opening brief. Appellant Brief, at 67, 68. In both cases, this Court affirmed the dismissal of an unjust enrichment claim that premised liability on lack of compliance with a governing contract. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("A plaintiff cannot pursue [a claim for unjust enrichment], however, if his relationship with a defendant is—like Hess's with the firm—governed by an express contract"); *Cromeens, Hollman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("The district court granted summary judgment on the Samsung Dealers' claims for

unjust enrichment and recoupment on the grounds that, in Illinois, quasi-contractual relief is available only where there is no express contract between the parties. We agree.") Again, because LKQ expressly bases its unjust enrichment claim on Rutledge's failure to comply with the RSU Agreement, it must fail.

LKQ contends its unjust enrichment claim should have survived Rutledge's motion to dismiss because it is an alternative theory of recovery. LKQ misunderstands the law. The unjust enrichment claim arises from the same scope of the contract at issue according to LKQ's pleading. Expressly stating Count III is in the alternative to Count I does not remove this fatal flaw.

LKQ's claim it is without a remedy based on the District Court's dismissal of LKQ's unjust enrichment count is wrong. Appellate Brief, at 69. First, the District Court dismissed this count without prejudice. SA17. LKQ could have repleaded this count to address the pleading errors that resulted in dismissal. LKQ cannot claim it was left without a remedy when it did not avail itself of the opportunity to replead. Second, to the extent that LKQ cannot enforce the RSU Non-Compete and Confidentiality Non-Compete, it is the result of LKQ's own overly broad and unenforceable contracts. LKQ could have drafted a reasonable non-compete but chose not to. LKQ's situation is of its own making.

The District Court correctly granted Rutledge's motion to dismiss Count III, and should be affirmed.

## CONCLUSION

For the reasons stated above, the Court should affirm the District Court's entry of judgment against LKQ.

Respectfully submitted,

**ROBERT RUTLEDGE,**
**Defendant - Appellee**

Dated: October 10, 2023

By: */s/ Tiffany L. Carpenter*
Tiffany L. Carpenter
Joseph W. Barber
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Ave., Ste. 1100
Chicago, IL 60604
T: (312) 456-3421; F: (312) 939-5617
tlc@h2law.com | jwb@h2law.com

*Counsel for Appellee*

4894-8702-4257, v. 6

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)(7)**
**Type-Volume Limitation, Typeface Requirements,**
**and Type Style Requirements**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains 8370 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared using Microsoft Word in 12 Point Century Schoolbook.

*By: /s/ Tiffany L. Carpenter*
Tiffany L. Carpenter
Joseph W. Barber
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Ave., Ste. 1100
Chicago, IL 60604
T: (312) 456-3421; F: (312) 939-5617
tlc@h2law.com | jwb@h2law.com

*Counsel for Appellee*

4894-8702-4257, v. 6

## CERTIFICATE OF SERVICE

I certify that on October 10, 2023, I electronically filed the foregoing document using CM/ECF, which will send notification of that filing to counsel of record in this matter.

_/s/ Tiffany L. Carpenter_

4894-8702-4257, v. 6