NO. 23-2330

In The

# United States Court Of Appeals
## For The Seventh Circuit

## LKQ CORPORATION,

*Plaintiff/Counter-Defendant- Appellant,*

v.

## ROBERT RUTLEDGE,

*Defendant/Counter-Claimant- Appellee.*

ON APPEAL FROM THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
THE HONORABLE THOMAS M. DURKIN, DISTRICT COURT JUDGE
CASE NO. 1:21-CV-03022

————————

## REPLY BRIEF OF
## PLAINTIFF/COUNTER DEFENDANT-APPELLANT

————————

Craig R. Annunziata
James M. Hux, Jr.
Joel W. Rice
FISHER & PHILLIPS LLP
Suite 3450
Ten S. Wacker Drive
Chicago, IL 60606
312-346-8061

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street  ♦  P.O. Box 1460 (23218)  ♦  Richmond, VA 23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................... 1

LEGAL ARGUMENT ............................................................................. 3

    A.    Rutledge Does Not Rebut Key Facts Presented by LKQ in its Principal Brief ................................................................. 3

    B.    Rutledge Cites to and Relies Upon Multiple Inaccurate, Misleading, and/or Irrelevant Facts ....................................... 6

    C.    The Court Should Reverse the Finding of Summary Judgment on Count I of the FAC and Enter Summary Judgment for LKQ ............................................................... 11

        1.    Under Delaware Law, the RSUA Non-Competes (Count I) Are Not Subject to the Reasonableness Analysis Applied to Restrictive Covenants ................. 11

        2.    Rutledge's Authorities Do Not Support His Conclusion that the RSUA Non-Competes Are Subject to a Reasonableness Analysis ......................... 19

    D.    This Court Should Overturn the District Court's Finding of Summary Judgment for Rutledge for Violation of the RCAs (Count II) ......................................... 23

        1.    Rutledge Engages in the Same Mistaken Analysis of the RCA Non-Competition Covenants that Constitutes Reversible Error by the District Court ............................................................................. 23

2.    To the Extent that the RCA Non-Competition Covenants are Overly Broad, the District Court Erred in Failing to Blue Pencil Any Overly Broad Provision ...................................................................... 28

3.    The RCA Non-Competition Covenants Are Supported by Independent and Adequate Consideration ............................................................. 30

E.    The District Court Erred in Dismissing Plaintiff's Claim for Unjust Enrichment in the FAC ........................... 31

CONCLUSION ....................................................... 34

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)(7) .... 35

CERTIFICATE OF FILING AND SERVICE ......................................... 36

## TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Abbott-Interfast Corp. v. Harkabus*,
  250 Ill. Ap. 3d 13, 619 N.E.2d 1337 (Ill. App. Ct. 1993) ............... 29

*Ainsle v. Cantor Fitzgerald, L.P.*,
  No. 9436-VCZ, 2023 WL 106924
  (Del. Ch. Jan. 4, 2023) ................................................. 19, 20, 21, 22

*Aircraft Gear Corp. v. Lentsch*,
  No. 18 C 50244, 2023 WL 2368038 (N.D. Ill. Mar. 6, 2023) .......... 23

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) .......................................................... 32

*Beard v. Elster*,
  160 A.2d 731 (Del. 1960) ................................................................ 15

*Caras v. Am. Original Corp.*,
  1987 WL 15553 (Del. Ct. Chan. July 31, 1987) ............................. 21

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
  349 F.3d 376 (7th Cir. 2003) .................................................. 32, 33

*Fifield v. Premier Dealer Servs., Inc.*,
  2013 IL App (1st) 120327, 993 N.E.2d 938
  (Ill. App. Ct. 2013) ......................................................................... 30

*First Commodity Traders, Inc. v. Heinold Commodities, Inc.*,
  766 F.2d 1007 (7th Cir. 1985) ....................................................... 33

*FP UC Holdings, LLC v. Hamilton*,
  2020 WL 1492783 (Del. Ch. Mar. 27, 2020) .................................. 20

*Hays Grp., Inc. v. Bassick*,
  No. 02 C 8194, 2005 WL 2420415 (N.D. Ill., Sept. 2009) ............. 26

*Holman v. Indiana,*
211 F.3d 399 (7th Cir. 2000) ........................................ 32

*JPMorgan Chase & Co. v. Pierce,*
517 F. Supp. 2d 954 (E.D. Mich. 2007) ................................. *passim*

*McInnis v. OAG Motorcycle Ventures, Inc.,*
2015 IL App (1st) 142644, 35 N.E.3d 1076
(Ill. App. Ct. 2015) .......................................................... 30

*Medix Staffing Solutions, Inc. v. Dumrauf,*
2018 WL 1859039 (N.D. Ill. April 17, 2018) ................................. 26

*Mickey's Linen v. Fischer,*
No. 17 C 2154, 2017 WL 3970595 (N.D. Ill. Sept. 8, 2017) ........... 26

*Pollard v. Autotote, Ltd.,*
852 F.2d 67 (3d Cir. 1988)........................................ 21, 22

*Reliable Fire Equipment Co. v. Arredondo,*
965 N.E.2d 393 (Ill. 2011) ............................... 2, 23, 24, 25

*Richards v. PAR, Inc.,*
954 F.3d 965 (7th Cir. 2020) ......................................... 3

*Sarah Bush Lincoln Health Ctr. v. Perket,*
605 N.E.2d 613 (Ill. App. Ct. 1992)........................................ 26-27

*StunFence, Inc. v. Gallagher Sec (USA), Inc.,*
2002 WL 1838128 (N.D. Ill. Aug. 12, 2002) ................................. 26

*Tasktop Techs. US Inc.,*
2018 WL 4935870 (D. Del. Oct. 11, 2018)..................................... 21

*Utility Audit v. Horace Mann Serv. Corp.,*
383 F.3d 683 (7th Cir. 2004) ......................................... 32

*W.R. Berkley Corporation v. Hall*,
No. 03C-12-146WCC, 2005 WL 406348
(Del. Super Feb. 16, 2005) ........................................................ *passim*

*W.R. Berkley Corp. v. Dunai*,
No. 1:19-cv-01223, 2021 WL 1751347
(D. Del., May 4, 2021) ............................................................ *passim*

**Rules:**

Fed. R. Civ. P. 8(e)(2) ............................................................... 32

Fed. R. Civ. P. 12(b)(6) ....................................................... 26, 27

## INTRODUCTION

Throughout this litigation, Rutledge has attempted to have his cake and eat it, too—keeping hundreds of thousands of dollars (which he converted from LKQ restricted stock grants) while refusing to comply with his contractual promises to LKQ and limited, 9-month, non-competition covenants. In its principal brief ("LKQ Br."), LKQ established why this result is legally untenable. The District Court's rulings on Count I of the FAC constitute reversible error because the Court applied the wrong legal standard to its review of the enforceability of the RSUA Non-Competes. The District Court's ruling on Count II of the FAC also constitutes reversible error because the District Court applied the wrong legal standard, which required a fact-intensive, totality of the circumstances test to the question of the enforceability of the RCA Non-Compete.

Rutledge's Appellee Brief ("Rutledge Br.") does not detract from these conclusions. Rutledge's response fails to rebut key facts presented by LKQ establishing the broad-based scope of Rutledge's duties as a Plant Manager for LKQ, his access to and knowledge of LKQ's competitively sensitive information, and the competitive threat posed by

his immediate employment with Fenix Parts.  Moreover, many of the facts that Rutledge does advance in his brief are inaccurate, misleading, or irrelevant.

With respect to Count I of the FAC, Rutledge's attempts to distinguish LKQ's on-point Delaware case authorities are weak and unpersuasive.  Several courts applying Delaware law have enforced clawback provisions in the context of stock equity grants and have not subjected them to the stricter scrutiny reserved for restrictive covenants, as urged by Rutledge.  In a desperate attempt to distinguish these on-point authorities, Rutledge relies upon purported legal distinctions that are immaterial or have no grounding in supporting law.

With respect to Count II of the FAC, Rutledge's arguments merely reinforce the conclusion that the District Court erred by failing to apply the fact-intensive, totality of the circumstances test mandated by *Reliable Fire Equipment Co. v. Arredondo*, 965 N.E.2d 393 (2011).  In his response, Rutledge makes no effort to review the competitive restrictions in the context of the complete factual record before this Court.  Further, Rutledge fails to acknowledge the significance of the extraordinarily reasonable 75-mile and 9-month restrictions in the RCA Non-

Competition Covenants (which Rutledge accepted while receiving hundreds of thousands of dollars from LKQ). Contrary to Rutledge's argument, the RCA Non-Competition Covenants accepted by Rutledge were not intended to and do not in this instance prevent a lower-level employee from purportedly working as a "janitor" for a competitor. Finally, LKQ has established that there is separate and adequate consideration in support of the RCA Non-Competition Covenants.

With respect to the District Court's dismissal of the unjust enrichment claim in the FAC, Rutledge's brief ignores the fact that he has pursued this action on the basis that the RSUAs are legally unenforceable. Rutledge cannot have it both ways. LKQ has pled a viable, alternative claim for relief in accordance with Federal pleading standards.

## LEGAL ARGUMENT

### A.   Rutledge Does Not Rebut Key Facts Presented by LKQ in its Principal Brief.

In reviewing the granting of summary judgment, this Court construes the evidence and grants all reasonable inferences in favor of the nonmovant. *Richards v. PAR, Inc.*, 954 F.3d 965, 967 (7th Cir. 2020). It is again worth noting that Rutledge was the movant below with respect

to summary judgment on Count I (RSUAs) and Count II (RCAs) of the FAC. In deciding whether to affirm or reverse the granting of summary judgment for Rutledge on these Counts, the Court must construe the evidence and all reasonable inferences in favor of LKQ.

In his appellee brief, Rutledge has not rebutted key facts presented by LKQ in its principal brief. LKQ's unrebutted facts establish the following, in summary form:

- Rutledge's broad-based authority and responsibilities as a Plant Manager for LKQ. *See* LKQ Br., pp. 8-9.

- LKQ designates a very small percentage of its senior managers (less than 2%) as "key employees" for participation in the RSU program, and participation in the RSU program by Rutledge and other key employees ***is not mandatory***. *See Id.*, pp. 11-12 (emphasis supplied).

- Rutledge had access to and relied upon a bevy of LKQ's competitively sensitive financial and customer data. This included reports containing LKQ's competitively sensitive information relating to daily sales and revenue, inventory, pricing, profitability and margins, customer sales volume, and customer contact information. *See Id.*, pp. 10-11.

- Rutledge left employment with LKQ to work for a direct competitor, lied about it to LKQ, and subsequently obtained the positions of Vice President and Southeast Area Manager for Fenix Parts. In the latter, Rutledge was responsible for managing Fenix Parts' facilities in the State of Florida and North Carolina. *See Id.*, pp. 16-21.

Stated differently, Rutledge has not established that there is a genuine dispute of material fact that (1) Rutledge was one of a select group of "Key Employees" who voluntarily entered into RSUAs, (2) he obtained employment with a direct competitor of LKQ, (3) in contravention of his RSUAs and non-competition covenants with LKQ, and (4) through which Rutledge threatened to exploit LKQ's confidential and competitively sensitive business information to which he gained access by virtue of his employment with LKQ.

**B.  Rutledge Cites to and Relies Upon Multiple Inaccurate, Misleading, and/or Irrelevant Facts.**

Rutledge's brief relies upon a potpourri of unsupported, misleading, and irrelevant factual assertions.[1]   To cite a few examples,[2] Rutledge contends that, as a Plant Manager at the Lake City Facility, he was not responsible for sales or customer service aspects of the Lake City Facility. Rutledge Br., 4.  This is untrue.  On this point, Rutledge testified that his duties as a Plant Manager encompassed the oversight of the "plant's daily operations from selling parts to your local customers to delivering those parts to those customers…"  ECF 85, ¶ 10.  Rutledge had access to daily sales and revenue reports, managed employees who worked in sales and delivered parts to customers, and participated on sales calls with LKQ customers.  *Id.*  In short, Rutledge was directly and indirectly involved in

---

[1] In his response brief, Rutledge references a proposed rule before the Federal Trade Commission.  Rutledge Br., p. 2.  A proposed rule does not constitute law (much less applicable law) and is completely irrelevant, but particularly as to the RSUAs, which involve a different analysis. Similarly, Rutledge's gratuitous facts about LKQ's "pre-suit investigation" have no bearing on this appeal, which does not concern a violation of a non-solicitation or non-disclosure provision.  *Id.*, p. 8.

[2] LKQ further directs the Court to LKQ's Responses to Robert Rutledge's Statement of Undisputed Material Facts (ECF 85), as well as its Responses to Robert Rutledge's Statement of Additional Facts (ECF 90), for additional context regarding the deficiencies in Rutledge's facts.

the operations and management of LKQ's sales and customer service efforts, and genuine issues of fact are abundant.

Rutledge also alleges that Rutledge's RSUs are part of his wages and benefits tied to employment. Rutledge Br., p. 5. Again, this is untrue.[3] In fact, Rutledge testified that the monetary benefits provided to him under the RSUAs were not conditioned upon anything except executing the RSUAs and abiding by their terms. ECF, 90, p. 2. Further, there is nothing in the language of the RSUAs that ties the granting of RSUs to performing any work, attaining any work objective, or otherwise refers to the RSUs as wages. *Id.* Likewise, Rutledge's assertion that payments made to him for the cashing of his RSUs were distributed through LKQ's payroll is false. Rutledge Br., p. 5. Rutledge testified that he gained access to his RSUs through a software program named Certent and sold his RSUs on the open market through an account with a third-party broker named Baird. ECF, 85, p. 6. There is no record evidence linking Certent, Baird, or grants of RSUs to LKQ's "payroll." *Id.*

---

[3] LKQ further notes that the District Court dismissed Rutledge's Counterclaim for unpaid wages, which was based on the theory that he was entitled to unvested RSUs as part of the wages and compensation that he earned through his employment with LKQ. *See* SA37-38.

The record evidence also does not establish that, in his capacity as a Vice President for Fenix Parts, Rutledge performed work roughly 50% of the time in Houston, Texas, or in the State of Texas.  ECF 85, ¶ 35.  Rutledge did not testify as to the amount of time that he purportedly worked in Texas.  *Id.*  Rutledge's home office where he performed work roughly 50% of the time was within a 75-mile radius of the Lake City Facility.  *Id.*  Rutledge's account of his job duties as a Vice President for Fenix Parts is also stilted and incomplete.  Rutledge Br., p. 6.  Among other things, Rutledge's position of Vice President with Fenix Parts involved the purchase, maintenance, construction, and reporting for the fleet and field assets for certain facilities.  ECF 80-2, ¶ 48.  Rutledge further engaged in the management of construction projects for Fenix Parts' facilities, which involved buying equipment, interacting with vendors, and negotiating pricing relating to purchases.  *Id.*  Rutledge's job duties with Fenix Parts dove-tailed with the job duties that he performed for LKQ, as he testified that he had responsibility relating to distribution, purchasing capital and plant assets, and negotiating and approving of vendor expenses as a Plant Manager for LKQ.  *Id.*, ¶¶ 8-9, 11, 49.

Rutledge also relies upon misleading and inaccurate statements concerning LKQ's efforts to protect its confidential business information. First, Rutledge states that the only means through which LKQ protects its confidential business information is through the restrictive covenants in the RSU Non-Competes and the RCAs. Rutledge Br., p. 7. In the cited testimony, however, LKQ's deponent, Robert Six, merely stated that one way LKQ seeks to protect its confidential, non-public information is through the RSUAs and RCAs entered into by employees such as Rutledge. ECF 85, ¶ 26. Six did not testify that this was the "only" way that LKQ protects this information, and was not questioned regarding other potential methods of protecting this information, such as confidentiality and non-disclosure agreements, handbook policies, limitations on accessing the network, or other security measures. *Id.* Second, Rutledge makes the conclusory statement that members of LKQ's sales team with access to this information are not subject to non-competes. Rutledge Br., p. 7. Rutledge again mispresents the cited testimony, in which Rutledge's counsel asked Six if there are sales members who have not signed **both** the RCAs and RSUAs. ECF, 85, ¶ 28. As LKQ readily acknowledges, it enters into RSUAs with a select

9

grouping of "key" employees, and the fact that a sales employee has not signed a RSUA certainly does not prove that he or she has not entered into a non-compete covenant. *Id.*

In his fact statement, Rutledge again attempts to narrow LKQ's interest in enforcing the RCA and RSUA Non-Competes to vendor and supplier relationships. Rutledge Br., p. 7. This is a red herring. LKQ's District Manager Six testified that, through these agreements, LKQ seeks to protect "customer pricing, customer discounts, customer contact information…vendor and supplier pricing, any potential rebates…financial information, revenue, margin data, expense data, profitability data…[and] any marketing strategies for Rutledge's market." ECF 79-2, p. 27.

In granting summary judgment in Rutledge's favor as to the RSUAs and the RCAs, the District Court engaged in impermissible weighing of the disputed evidence. *See* LKQ Br., pp. 27, 29-30, 47-48, 53. The District Court credited Rutledge's testimony while giving short shrift to the powerful countervailing evidence presented by LKQ in favor of a finding of reasonableness as to both the RSUAs and the RCAs. *Id.* The District Court appeared to be swayed by Rutledge's appeals to sympathy,

referring to Rutledge repeatedly and inaccurately as a mere "middle manager" and straining to find hardship to Rutledge in merely being required to return the substantial additional benefits Rutledge had received in exchange for his limited (but broken) promise not to compete for a period of nine months. *Id.* Conversely, the District Court paid mere lip service to other factors bearing upon the reasonableness analysis, including the very limited temporal and geographic scope of the RC Agreement (nine months and 75-mile radius of Rutledge's place of employment). For the reasons set forth in LKQ's principal brief and herein, a full and objective review of the factual record supports LKQ's requested relief with respect to Count I and Count II of the FAC.

**C. The Court Should Reverse the Finding of Summary Judgment on Count I of the FAC and Enter Summary Judgment for LKQ.**

**1. Under Delaware Law, the RSUA Non-Competes (Count I) Are Not Subject to the Reasonableness Analysis Applied to Restrictive Covenants.**

With respect to the Count I of the FAC, the District Court committed a fundamental analytical error by treating the RSUAs as ordinary employment-based restrictive covenants subject to a reasonableness analysis. They are not. Rather, the RSUAs merely

provide that should Rutledge choose to compete against LKQ, he must return the substantial proceeds from the stock equity grants he received in exchange for such promise.[4]  This issue should have been analyzed under traditional contract law principles, rather than as a restraint of trade subject to stricter scrutiny.[5]

In its principal brief, LKQ established that Delaware law chosen by the parties amply supports this conclusion, as do the holdings and logic applied in other persuasive Federal District Court decisions.  LKQ Br., pp. 32-47.  The *Hall*, *Dunai*, and *Pierce* decisions cited in LKQ's principal

---

[4] In his brief, Rutledge makes the argument that the RSUA Non-Competes cannot be considered forfeiture provisions because they are found within multiple contractual provisions which are below a heading or title of "Non-Competition and Confidentiality."  Rutledge Br., p. 13.  This argument is specious.  The substance of the RSUA Non-Competes is what controls, not a paragraph heading.  And that substance, as set forth in Paragraphs ¶¶ 16-17, 20-21 of the respective RSUAs, clearly shows that the RSUAs are clawback or forfeiture provisions.

[5] A restrictive covenant agreement is typically entered into as a mandatory term and condition of employment.  In other words, the employee either signs the agreement or is not hired or is terminated.  The employee has no say in the matter.  That is vastly different than this case.  Rutledge's participation in the RSU program was completely voluntary.  ECF 80-2, ¶¶ 19, 21.  He could have declined to enter into the RSU agreements.  *Id.*  However, once he executed the RSU Agreements, he was bound by his promises to LKQ in exchange for substantial financial benefits.

brief are abundant authority for the proposition that Delaware courts enforce this type of clawback provision. *W.R. Berkley Corporation v. Hall*, No. 03C-12-146WCC, 2005 WL 406348, *2 (Del. Super Feb. 16, 2005); *JPMorgan Chase & Co. v. Pierce*, 517 F. Supp. 2d 954, 968 (E.D. Mich. 2007); *W.R. Berkley Corp. v. Dunai*, No. 1:19-cv-01223, 2021 WL 1751347 (D. Del., May 4, 2021). Each of the cases: (1) involved the analysis of clawback provisions under a stock benefit plan; (2) found such provisions were enforceable; and (3) did not apply a general reasonableness standard relating to the scope of the non-competition covenant, including any analysis of its temporal or geographic scope. LKQ Br., pp. 32-38. Further, the *Dunai* and *Hall* cases both categorically rejected the argument that the non-competition provisions constituted an unenforceable liquidated damages provision. *Id.*, pp. 34-35, 37.

Rutledge's efforts to distinguish these authorities are weak. Initially, Rutledge argues that the *Hall* and *Pierce* decisions are distinguishable because these cases were decided under an arbitrary and capricious standard as the courts were reviewing administrative decisions (made by a stock committee). *See* Rutledge Br., p. 17 (citing *Hall*, 2005 WL 406348, at *2; *Pierce*, 517 F. Sup. 2d at 962-64).

13

LKQ has already addressed this purported distinction in its principal brief. *See* LKQ Br., pp. 45-46. Regardless of whether the court in *Pierce* reviewed the stock committee's interpretation of a contract under an arbitrary and capricious standard the *Pierce* court is still required to apply the correct, underlying legal standards to the issue of whether there was an enforceable contract under Delaware law. The courts in *Pierce*, *Hall*, and *Dubai* did not apply a "restrictive covenant" reasonableness analysis to the legal enforceability of the quite similar clawback provisions at issue in those cases because such analysis is not required under Delaware law for stock equity forfeiture provisions, regardless of any deference to a committee's determination. *See* LKQ Br., pp. 45-46.

Rutledge's effort to draw a distinction between the enforceability of clawback provisions contained in stock option agreements (where there is an option price) as opposed to LKQ's grants of restricted stock is also of no moment. Rutledge Br. 18. In his brief, Rutledge calls this an "important distinction." *Id.* Yet, Rutledge does not cite a single court decision, dicta within a court decision, or any other legal authority which recognizes this distinction. *Id.*, pp. 18-19. The fact that Rutledge's

counsel self-servingly thinks it is an important distinction does not make it so.

Fundamentally, both a stock option grant (which has an option price) and the RSUs (where the employee receives the full value of the restricted stock) are financial benefits awarded to an employee. The through-line of these equity awards to employees is that they align the interests of the company and the employee receiving the equity award. It has long been established by the Delaware Supreme Court that employers who provide their employees with equity grants may include conditions ensuring that the grants do not constitute waste or a gift of corporate assets. *See Beard v. Elster*, 160 A.2d 731, 735-36 (Del. 1960).

Indeed, there is no logical reason why the mechanics of the underlying equity grant should affect the potential enforceability of a forfeiture non-competition provision. A larger grant of stock options in a high growth company can be as or more profitable than a smaller grant of stock options in a less profitable company. It all depends on the circumstance. In the absence of any legal authority (of which there is none), the Court should decline to create such a distinction. This is particularly true as it would create an artificial preference for one type

of benefit plan over another and is a matter best reserved for the Delaware legislature or courts.

Rutledge also argues that the lookback period for forfeiture of the RSU grants (*i.e.,* LKQ seeks to recover grants dating back to 2013) should cut off LKQ's entitlement to recover. Rutledge Br. 19. This distinction also has no legal support. Rutledge cites to no legal authority wherein a court has held that there is a *de facto* limitations period (depending on the year of the stock grant) on an employer's ability to recover under a forfeiture provision in a contract. In practice, how would a court even frame or enforce such a rule? Rutledge also argues that the employers in *Pierce*, *Hall*, and *Dunai* only sought to restore the *gains* on stock options. Rutledge Br. 19. Here, too, LKQ seeks to recover the gains (or proceeds) that Rutledge received through the stock equity program. Rutledge would never be worse off had he not participated in the RSU program. This is not fundamentally different than the recovery of the value of the stock option grants in *Pierce*, *Hall*, and *Dunai*. *See* Rutledge Br., p. 19 (citing *Pierce*, *Hall*, and *Dunai*). And nothing in those cases suggests that Delaware law would make such a distinction.

Rutledge's argument also overlooks a key point.  Rutledge entered into each of these agreements voluntarily.  Each year, Rutledge reviewed and signed the respective RSUAs and accepted the financial benefits from these agreements.  In repeatedly signing and accepting the benefits of these agreements, Rutledge was aware of the limited 9-month non-competition covenant that he entered into in exchange for restricted stock valued in excess of $300,000.  Rutledge could have declined to participate in the RSU program and continued to work for LKQ!  By accepting the RSUs, Rutledge promised not to work for a direct competitor of LKQ for a limited and reasonable 9-month period.  Instead, he refused to honor his contractual promises to LKQ, kept the hundreds of thousands of dollars, and now seeks to have his cake and eat it, too.

Rutledge also argues that the scope of the non-competition clawback provisions in *Pierce*, *Hall*, and *Dunai* cases are narrower than the scope of the non-competition clawback provisions in the RSUA Non-Competes.  Rutledge Br., p. 19.  This argument is immaterial, as none of these cases applied a reasonableness analysis to the clawback provisions.  LKQ Br., pp. 32-36.  Similarly, Rutledge's arguments relating to the timing (the period over which LKQ seeks to recover) and nature of the

equity grants (options v. the granting of restricted stock) are all effectively reasonableness arguments that are not applicable to the analysis of the RSUA Non-Competes.

Rutledge's underlying premise–that the language in the non-competition forfeiture provisions is broader than the same provisions in the RSUAs–is also wrong. For example, in *Hall,* the relevant Incentive Stock Option Agreement allowed the company to seek reimbursement if the employee left employment within six months and "directly or indirectly…(i) …engages in any business activities which are competitive, to a material extent, with any substantial type or kind of business activities conducted by W.R. Berkley Corporation." *Hall,* 2005 WL 406348, *2. In *Dunai*, the defendant received more than $200,000 in stock pursuant to a stock benefit plan from her prior company, which provided that the employer had the right to clawback the stock proceeds if she engaged in "competitive action" against the company within a year of termination. *Dunai*, 2021 WL 1751347, at *2-3. Similar to the RSUA Non-Competes, neither of these non-competition clawback provisions contained any geographic limitation and both of these provisions are similar in terms of their temporal duration and competitive scope. *Hall,* 2005 WL 406348, *2; *Dunai*, 2021 WL 1751347, at *2-3.

18

Finally, Rutledge conspicuously fails to distinguish LKQ's authorities that have rejected the District Court's finding that the RSUA Non-Competes are tantamount to an unenforceable liquidated damages provision. LKQ Br., pp. 35-38. As established by LKQ in its principal brief, Delaware courts have considered and rejected this argument explicitly in the context of a stock equity agreement with a clawback provision. *See Id.* (citing *Dunai*, 2021 WL 1751347, *2; *Hall,* 2005 WL 406348, *2). For this reason as well, the Court should reverse the District Court's finding of summary judgment in favor of Rutledge on Count I of the FAC, and enter summary judgment for LKQ.

**2.     Rutledge's Authorities Do Not Support His Conclusion that the RSUA Non-Competes Are Subject to a Reasonableness Analysis.**

In its principal brief, LKQ established why the holding in *Ainsle v. Cantor Fitzgerald, L.P.*, No. 9436-VCZ, 2023 WL 106924 (Del. Ch. Jan. 4, 2023) is inapplicable and has no bearing on the enforceability of the RSU Non-Competes. LKQ Br., pp. 41-44. Significantly, Rutledge does not contest that the holding of *Ainsle* is from an intermediate Delaware appellate court. Rutledge Br., p. 20. Rutledge does not argue that the *Ainsle* decision is *stare decisis* and binding on this court. *Id.* Rutledge

also does not dispute that the *Ainsle* court failed to distinguish the numerous other authorities applying Delaware law that have viewed stock forfeiture agreements as not governed by a reasonableness standard. *Id.*

Rutledge also fails to address the key factual distinctions in the *Ainsle* case. While Rutledge states that the non-competition provision at issue in *Ainsle* is a "forfeiture for competition provision," he conveniently overlooks that the non-competition "forfeiture" provisions in *Ainsle* were a contractual condition precedent to the payment of future compensation over the course of a four-year period. *See Ainsle*, 2023 WL 106924, at **1-2, 5-6, 20-25. Here, by contrast, LKQ merely seeks to restore the *status quo ante* with respect to RSUs that were already granted to Rutledge in consideration of his contractual promises in the RSUAs. For each of these reasons, as well as those articulated by LKQ in its principal brief, *Ainsle* has no bearing on the enforceability of the RSUA Non-Competes.

Rutledge's other authorities are not on point. Rutledge Br., pp. 13-14. As LKQ previously established, among other issues, the *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *5-8 (Del. Ch. Mar. 27, 2020) decision did not involve or relate to the forfeiture of any monetary

benefits.  LKQ Br., pp. 40-41.  Likewise, the *Tasktop Techs. US Inc.*, 2018 WL 4935870 (D. Del. Oct. 11, 2018) and *Caras v. Am. Original Corp.*, 1987 WL 15553, at *2 (Del. Ct. Chan. July 31, 1987) decisions did not involve or relate to the forfeiture of monetary benefits.  *Id.*  In each of those cases, at issue was a non-compete provision subject to a reasonableness analysis.

Rutledge also argues that the case of *Pollard v. Autotote, Ltd.*, 852 F.2d 67, 72 (3d Cir. 1988) supports the conclusion that a reasonableness analysis should be applied to the RSUA Non-Competes.  It does not.  Instead, *Pollard* merely reinforces LKQ's assessment of Delaware law. In *Pollard*, the Third Circuit Court of Appeals surveyed Delaware law for any authority relating to the standard for evaluating the enforceability of a provision providing for forfeiture[6] of deferred compensation in the event of prohibited competition and did not find any case on point. *Pollard*, 852 F.2d at 72.  Relying on Massachusetts law, the court applied

---

[6] Like *Ainsle*, the "forfeiture" provision at issue in *Pollard* related to future compensation, or "deferred compensation" in the case of *Pollard*. This is not our case.  The clawback provision at issue here and in the cases relied upon by LKQ (*Dunai*, *Hall*, and *Pierce*) involved the forfeiture of stock benefits that had already been provided to and retained by the employee and an attempt by the employer to return the employee to the *status quo ante*.

a reasonableness test to the non-competition provision. *Id.*, at 72-73. Subsequent to the *Pollard* decision, and as established, *supra*, there has been an abundance of Delaware authority on this legal issue. Given the development of Delaware law on this issue since *Pollard*, the holding in *Pollard* is inapposite.

In its principal brief, LKQ also argued that, even if the *Ainsle* holding dictated that a reasonableness analysis should be applied in the context of the RSUA Non-Competes (which it does not), the District Court still failed to apply the more lenient "sale of business" level of scrutiny adopted by the *Ainsle* court. LKQ Br., p. 48. Rutledge does not even address this argument, despite his reliance upon *Ainsle* otherwise. Rutledge also fails to distinguish the sale of business cases cited by LKQ that contain non-competition restrictions broader in scope than the RSUA Non-Competes. LKQ Br., p. 49. Therefore, even if the Court determines that a reasonableness test should be applied to the RSUAs (which it should not), the District Court's decision should still be reversed as the non-competition restrictions clearly pass muster under the more lenient sale of business standard.

**D.    This Court Should Overturn the District Court's Finding of Summary Judgment for Rutledge for Violation of the RCAs (Count II).**

    **1.    Rutledge Engages in the Same Mistaken Analysis of the RCA Non-Competition Covenants that Constitutes Reversible Error by the District Court.**

In finding the RCAs overly broad and unenforceable, the District Court misapplied the Illinois Supreme Court's holding in *Reliable Fire Equipment Co. v. Arredondo,* 965 N.E.2d 393, 396 (Ill. 2011). *Reliable Fire* mandates that courts apply a reasonableness test based on the totality of the circumstances of each case. As established in LKQ's principal brief, a review of the full record, rather than cherry-picked factors in isolation, reveals that the 9-month, 75-mile restrictions in the RCA Non-Competes are narrowly tailored and enforceable.

Rutledge's brief reinforces the strength of LKQ's key arguments. "Under *Reliable Fire*, the totality of the circumstances will need to be considered to determine whether the restrictive covenants contained in the Agreement are enforceable." *Aircraft Gear Corp. v. Lentsch*, No. 18 C 50244, 2023 WL 2368038, at *12 (N.D. Ill. Mar. 6, 2023). Despite this mandate, Rutledge's arguments double down on the District Court's error, and are directed almost exclusively to the facial scope of the

competitive restrictions. It is as if Rutledge is arguing a Rule 12(b)(6) motion to dismiss. However, summary judgment was decided here on a detailed factual record, the bulk of which is neither addressed nor rebutted by Rutledge in his appellee brief. *See*, *Supra*, Section II.

Tellingly, Rutledge's brief fails to address or even acknowledge the significance of the reasonable 75-mile and 9-month restrictions in the Non-Competition Covenants. Rutledge Br., pp. 21-24. Rutledge fails to address these limited restrictions in any manner, or otherwise distinguish LKQ's authorities establishing the reasonableness of these restrictions under controlling Illinois law. Rutledge Br., pp. 21-24; LKQ Br. 56-58.

In his brief, Rutledge again relies upon a hypothetical "janitor" argument. Rutledge Br., pp. 22-23. Applying the *Reliable Fire* wholistic analysis to the factual record before this Court, LKQ is clearly not seeking to prevent a lower-level employee from working as a "janitor." It is not disputed that, for more than a decade, Rutledge was a senior manager for LKQ with substantial and comprehensive authority over the full scope of LKQ's auto salvage business in the Lake City, Florida market. *See* LKQ Br., Factual Background Section, A(2). In return for

his services, LKQ designated Rutledge a "key employee" and provided Rutledge with substantial compensation in the form of a six-figure salary and bonuses. LKQ Br., Factual Background Section, A(4). Rutledge also received stock equity grants worth over $300,000. *Id.* Given the substantial consideration that LKQ paid to Rutledge over the course of a decade, it was not unreasonable for LKQ to expect that Rutledge would not work for a direct competitor of LKQ in the Lake City, Florida market for a limited period of 9 months. In his response, Rutledge cherry-picks a few isolated facts in support of his case but avoids any discussion of the full factual record. This, again, is contrary to the Illinois Supreme Court's mandate in *Reliable Fire*.

Indeed, Rutledge's hypothetical "janitor" argument is completely untethered to the facts in this case. To the contrary, LKQ sought to enforce the RCA Non-Competition Covenants to prevent Rutledge from leaving for substantial employment with a direct competitor, Fenix Parts, in a role in which he would be able to exploit his inside knowledge of LKQ's business information. LKQ Br., Factual Background Section, A(6). The record further supports that Rutledge obtained competitive employment with Fenix Parts as a Vice President and Area Manager

with operational and managerial responsibility for the Southeast Region. *Id.*, Factual Background Section, A(6) and A(7).  Each of these positions required Rutledge to perform duties that dove-tail or mirror the duties that he performed as a Plant Manager for LKQ.  *Id.*

Rutledge again relies on *Medix Staffing Solutions, Inc. v. Dumrauf*, 2018 WL 1859039, at *3 (N.D. Ill. April 17, 2018), *Hays Grp., Inc. v. Bassick*, No. 02 C 8194, 2005 WL 2420415 (N.D. Ill., Sept. 2009), and *StunFence, Inc. v. Gallagher Sec (USA), Inc.*, 2002 WL 1838128 (N.D. Ill. Aug. 12, 2002) in support of his conclusion that the RCA Non-Competition Covenants are overly broad and unenforceable.  Rutledge Br., pp. 13-15. For the reasons previously established by LKQ in its principal brief, these cases are factually and legally distinguishable.  LKQ Br., pp. 60-61. Notably, each of these cases was decided on a Rule 12(b)(6) motion to dismiss and without the benefit of a developed factual record.

Rutledge also fails to address (or even acknowledge) the factually analogous cases that LKQ has cited in support of the enforceability of the RCA Non-Competition Covenants, including *Mickey's Linen v. Fischer*, No. 17 C 2154, 2017 WL 3970595 (N.D. Ill. Sept. 8, 2017) (affirming preliminary injunction for employer) and *Sarah Bush Lincoln Health Ctr.*

*v. Perket*, 605 N.E.2d 613, 614-17 (Ill. App. Ct. 1992) (affirming preliminary injunction for employer).    LKQ Br., pp. 60-61.    Unlike Rutledge's Rule 12(b)(6) authorities, these cases provide this Court with concrete examples of the application of a developed factual record in analyzing non-competition provisions that are similar in scope to the RCA Non-Competition Covenants.

Rutledge also again argues that LKQ's legitimate protectable interests in the enforceability of the RCA Non-Competition Agreements are limited to vendor and supplier relationships.    Rutledge Br., p. 25. LKQ has established that its interests in enforcing the RCA Non-Competition Covenants against Rutledge are much broader than vendor or supplier relationships.    LKQ Br., pp. 54-56.    On this point, Rutledge has not disputed that he had access to and relied upon LKQ's commercially sensitive information in the performance of his duties as a Plant Manager.    LKQ Br., Factual Background Section, A(2) and A(3). This included daily sales and revenue information, reports containing profitability and customer sales volume, customer contact information, and key performance indicators, including profit margins. *Id.* The record further supports that LKQ seeks to enforce the Non-Competition

Covenants as a means of preventing the disclosure and competitively harmful use of this wide-ranging and competitively valuable information. LKQ Br., Factual Background Section, (A)(3) and (A)(5).

Even if this were not the case, Rutledge also fails to rebut LKQ's authority finding that vendor and supplier relationships can support a restrictive covenant in accordance with Illinois law. LKQ Br., pp. 63-64. Rutledge also fails to address and to distinguish LKQ's authority establishing that Rutledge's access to confidential information relating to customers is a legally protectable interest in support of the RCA Non-Competition Covenants. LKQ Br., p. 55. Therefore, LKQ has established that it has legitimate protectable interests that support the enforcement of the RCA Non-Competition Covenants.

> **2. To the Extent that the RCA Non-Competition Covenants are Overly Broad, the District Court Erred in Failing to Blue Pencil Any Overly Broad Provision.**

As LKQ established in its principal brief, the District Court erred in failing to blue-pencil the Non-Competition Covenants in the RCAs. In his defense of the District Court's determination, Rutledge fails to address a key argument in LKQ's principal brief. The case for judicial modification is strengthened where the parties have evinced their intent to allow a court

to modify or sever alleged unenforceable provisions. *See Abbott-Interfast Corp. v. Harkabus*, 250 Ill. Ap. 3d 13, 619 N.E.2d 1337 (Ill. App. Ct. 1993). Under each of the RCAs, the parties agreed that a court shall have the power to modify or delete or sever a provision to render the agreement enforceable. *See* FAC, ¶ 47. For obvious reasons, Rutledge neglects to mention that he had agreed to and directed a court to modify any overly broad provision.

Rutledge's contention that modification of the RCA Non-Competes would give LKQ or other employers a perverse incentive to draft the broadest possible agreement and rely upon judicial modification also does not ring true. The RCA Non-Competition Covenants already have a 9-month temporal limitation and a 75-mile geographic limitation. This is not, as Rutledge would have the Court believe, an instance where LKQ is enforcing a broad non-compete against a low-level employee to prevent him from working as a janitor anywhere within the continental United States for multiple years after his employment ended. Rather, this is a narrowly tailored provision forbidding competitive employment for a brief period in a narrow geography. To the extent that any aspect of the restriction in the RCA Non-Competes is overly broad, the equities in this case favor modification.

### 3. The RCA Non-Competition Covenants Are Supported by Independent and Adequate Consideration.

Rutledge argues that there is no consideration in support of the Non-Competition Covenants in the RCAs. Rutledge Br., p. 26. Specifically, Rutledge contends that, because the consideration for the RCAs is also tied to his acceptance of the RSUAs, there is no independent consideration in support of the RCAs. *Id.* Under Illinois law, however, it is well settled that continued employment of an at-will employee is adequate consideration to support a restrictive covenant agreement. *Fifield v. Premier Dealer Servs., Inc.*, 2013 IL App (1st) 120327, ¶ 19, 993 N.E.2d 938, 943–44 (Ill. App. Ct. 2013). To this end, the language in the RCAs explicitly states that Rutledge's promises in the RCAs are "in consideration of Employee's employment by and with Employer…" *See* RCAs, p. 1. Illinois courts have also found that "two years of continued employment will constitute adequate consideration and overcome the illusory benefit of continued at-will employment." *McInnis v. OAG Motorcycle Ventures, Inc.*, 2015 IL App (1st) 142644, ¶ 45, 35 N.E.3d 1076, 1087 (Ill. App. Ct. 2015).

It is not disputed that Rutledge left his employment with LKQ in April of 2021. ECF 80-2, ¶¶ 43-45. Because LKQ seeks to enforce substantially similar language in the RCA Non-Competition Covenants entered into more than two years prior to Rutledge's separation of employment from LKQ (*e.g.*, the 2019 RCAs, 2018 RCAs, the 2017 RCAs, etc.), LKQ can establish that continued employment is an independent and legally adequate source of consideration in support of the RCA covenants. Furthermore, this is an independent form of consideration that has no nexus to Rutledge's acceptance of the RSUAs. Accordingly, LKQ has established that there is sufficient and legally binding consideration in support of the enforcement of the RCA Non-Competition Covenants.

### E.     The District Court Erred in Dismissing Plaintiff's Claim for Unjust Enrichment in the FAC.

In his brief, Rutledge contends that LKQ had not adequately pled a claim for unjust enrichment in the FAC. Rutledge Br., p. 28-29. This argument is emblematic of Rutledge's have my cake and eat it too approach to this lawsuit. Rutledge's argument ignores the fact that he defends this action on the basis that the RSUAs are legally unenforceable.

Fed. R. Civ. P. 8(e)(2) permits a party to plead alternative theories of relief under both legal and equitable grounds, even if the theories are inconsistent. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Under this doctrine, a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead a claim for quasi-contractual relief. *Id.*

As this Court has explained, the parties "need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). At the pleading stage, the court draws all reasonable inferences in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). As established in LKQ's principal brief, a review of the FAC reveals that LKQ sufficiently pled an alternative claim for unjust enrichment. LKQ Br., pp. 67-68.

In his brief, Rutledge cites *Utility Audit v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) for the proposition that, "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the

contract." Rutledge Br., p. 28. In determining whether a claim falls outside a contract, the subject matter of the contract governs. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). However, this analysis only holds true if there is an underlying, enforceable contract. *See Cromeens*, 349 F.3d at 397 (stating that, "a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative. Once a valid contract is found to exist, quasi-contractual relief is no longer available."). In this case, Rutledge has defended against any recovery under the RSUAs on the grounds that the RSUAs are legally unenforceable and purportedly in contravention of the public policy of the State of Delaware. Rutledge cannot have it both ways. To the extent that the RSUAs are legally unenforceable, there must be a remedy for Rutledge's brazen acceptance of substantial equity grants and subsequent departure to work in a competitive capacity with one of LKQ's chief competitors. Accordingly, the District Court should remand Count III to the District Court for further proceedings and trial.

## CONCLUSION

For all the above reasons, LKQ respectfully requests that this Court: (1) reverse summary judgment for Rutledge on Count I of the FAC and enter judgment for LKQ on that same Count; (2) reverse summary judgment for Rutledge on Count II of the FAC and remand this case to the District Court for trial on Count II; and (3) remand Count III to the District Court for further proceedings and trial.

Respectfully submitted,

*/s/ Joel W. Rice*
Craig R. Annunziata
Joel W. Rice
James M. Hux, Jr.
FISHER & PHILLIPS LLP
10 S. Wacker Drive
Suite 3450
Chicago, IL 60606
312-346-8061

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(A)(7)
### Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed.

R. App. P. 32(a)(7)(B) because:

    this brief contains <u>6,719 words</u>, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because:

    this brief has been prepared using Microsoft Word in <u>14 Point Century Schoolbook</u>

*/s/ Joel W. Rice*
Joel W. Rice
Craig R. Annunziata
James M. Hux, Jr.
Fisher & Phillips LLP
Suite 3450
10 S. Wacker Drive
Chicago, IL 60606
312-346-8061

*Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

The undersigned, counsel for Appellant LKQ Corporation, hereby certifies that on October 30, 2023, the foregoing Reply Brief of Appellant was filed via the Court's CM/ECF System, which will send notice of such filing to all registered users.

*/s/ Joel W. Rice*
Joel W. Rice
Craig R. Annunziata
James M. Hux, Jr.
FISHER & PHILLIPS LLP
Suite 3450
10 S. Wacker Drive
Chicago, IL 60606
312-346-8061

*Counsel for Appellant*